| .THOMAS F. DALEY, Judge.
In this workers’ compensation claim, the defendant, Auto Craft, Inc., has appealed the judgment rendered in favor of plaintiff, Ronald J. Saragusa. Plaintiff has answered the appeal. For the reasons that follow, we affirm the judgment as amended.
*551 FACTS:
Mr. Saragusa worked for Auto Craft, Inc. (hereinafter Auto Craft), an automobile repair shop owned by Michael Walker, in April 1998 as a body repair technician. At the close of business each day, part of his job duties included moving cars out of an adjacent lot and into the Auto Craft shop for the night. On a Friday in the middle of July 1998, as he was walking in the lot to move a car, he twisted his ankle when he stepped in a hole. He testified that after he twisted his ankle he walked back into the shop and informed the shop foreman, Bobby |sRehage, that he twisted his ankle and was going home. He went home, put ice on his ankle, and stayed off of the ankle for the weekend. He returned to work on Monday morning. Mr. Saragusa testified that a couple of days later, he twisted this same ankle while at work when he walked over metal bars in the stall where he worked. He further testified that about two days later he stepped on an air hose at work, twisting the same ankle again. Mr. Saragusa testified that he told both Mr. Walker and Mr. Rehage about this incident. Mr. Saragusa explained that he did not seek medical treatment for these injuries, instead he just wore an ace bandage to support his ankle.
Mr. Saragusa testified that on July 28, 1998, he was walking down an incline exiting the shop while carrying a vehicle hood when his leg “went out”, causing him to fall to the ground. Mr. Saragusa explained that he was in excruciating pain. Mr. Walker looked at his ankle and left to buy ice. When Mr. Walker returned with the ice, he wrapped the ankle. Mr. Sara-gusa then left the shop and called his fiancée who made an appointment for him to see a doctor.
Mr. Saragusa was examined by Dr. William Pusateri that same day. He explained that he initially claimed this injury on his own medical insurance, but when his medical insurance company discovered the injury occurred at work, they refused to pay for further treatment. Mr. Saragusa explained that Mr. Walker paid for his medical expenses initially, then when Dr. Pusateri recommended surgery, Mr. Walker asked that Mr. Saragusa be examined by another physician. Mr. Walker chose Dr. Grimm to examine Mr. Saragusa. Dr. Grimm recommended an MRI of the ankle and Mr. Walker refused to pay for this procedure. At the time of trial, Mr. Sara-gusa had not had the MRI or surgery.
Mr. Saragusa testified that he continued working at Auto Craft until January 21, 2000. At the time of trial, he was working at another automobile repair shop earning a higher salary than he earned at Auto Craft.
[4Dr. Pusateri testified that Mr. Saragu-sa presented to his office on July 28, 1998 stating that he had twisted his ankle at work on two occasions prior the incident of that date. Dr. Pusateri diagnosed Mr. Saragusa as having a Grade III ankle sprain. He placed the ankle in an air cast and told him to elevate and apply ice to the ankle. Dr. Pusateri treated Mr. Saragusa for complaints related to the ankle for the next few months. Dr. Pusateri explained that the lateral aspect of Mr. Saragusa’s ankle was unstable and for this reason he recommended surgery to stabilize the ankle. He explained that he would only perform the surgery on the ankle if Mr. Sara-gusa was “symptomatic” meaning that the ankle gave out frequently.
Dr. Pusateri testified that Mr. Walker called him and stated that he did not believe that the ankle injury occurred the way Mr. Saragusa claimed. Dr. Pusateri testified that the sprain diagnosed on July 28, 1998 was superimposed on a previous injury. Dr. Pusateri testified that the pre *552 vious injury was the two occasions that Mr. Saragusa reported having twisted his ankle in July 1998. Dr. Pusateri testified that Mr. Walker disagreed with his diagnosis.
Dr. Pusateri admitted that he had written a letter on June 8, 1999 stating that Mr. Saragusa had slammed on the brakes of his car when the car hydroplaned and hit a curb the weekend before he first came to Dr. Pusateri’s office. Dr. Pusateri testified that he had never seen the type of injury suffered by Mr. Saragusa from slamming on brakes.
Michael Walker testified that on the morning of July 28, 1998 he observed Mr. Saragusa sitting on the floor stating that his leg had gone out and that he had hurt his leg in the lot two to three weeks earlier. Mr. Walker testified that the ankle did not appear swollen and Mr. Saragusa did not appear to be in pain. Mr. Walker admitted that he went to the store to purchase ice to put on Mr. Saraguasa’s leg and that he wrapped the entire bag of ice around Mr. Saragusa’s leg. Mr. Walker | Bexplained that he called Mr. Saragusa’s house later in the day to check on him and was told that he was at Dr. Pusateri’s office. Mr. Walker testified that he called the doctor’s office and told them that he would pay for the visits, which he did. Mr. Walker explained that when Mr. Saragusa told him he needed surgery, he went to talk to Dr. Pusateri about the injury. Dr. Pusateri told him that this injury could not have happened from slamming on the brakes.
The deposition of Dr. Matthew Grimm was admitted into evidence. Dr. Grimm testified that Mr. Saragusa told him he stepped in a hole in a lot and injured his ankle. He then reinjured the ankle two times after that. He noted that Mr. Sara-gusa had a lot of stiffness and decreased motion in his ankle and recommended physical therapy. Dr. Grimm testified that the range of motion in Mr. Saragusa’s ankle increased after the physical therapy. He agreed with Dr. Pusateri that Mr. Sar-agusa had sustained an ankle sprain superimposed on an old injury. He did not feel that Mr. Saragusa needed surgery, but did feel that an MRI was necessary to address Mr. Saragusa’s continued complaints regarding the ankle. Dr. Grimm admitted that the injury could have been caused by slamming on brakes.
At the conclusion of trial, the trial court rendered judgment finding Mr. Saragusa was injured during the course and scope of his employment and that he was entitled to temporary total disability benefits. The Court further found that Mr. Saragusa was entitled to payment of all medical expenses, medication expenses, and transportation expenses related to this injury.
The court further found that the defendant was arbitrary and capricious and penalties of $2,000.00 were awarded for refusal to pay for the surgical procedure, MRI, and other medical expenses. Penalties of $2,000.00 were awarded for failure to pay indemnity benefits. Attorney’s fees of $6,000.00 were also awarded.
Both parties moved for a new trial. Mr. Saragusa argued he was entitled to a new trial because Mr. Walker and Auto Craft were his joint employers and urged |Bthe trial court to grant a new trial regarding issue of the liability of Mr. Walker. Auto Craft moved for a new trial claiming the trial court erred in awarding indemnity payments, penalties, and attorney’s fees for failure to pay indemnity benefits, and penalties and attorney’s fees for discontinuation of medical benefits. The trial court granted a new trial in favor of Auto Craft on the issue of indemnity owed, but denied *553 the new trial on other issues [1] The trial court denied Mr. Saragusa’s Motion for New Trial.
AUTO CRAFT’S ASSIGNMENTS OF ERROR:
In its first Assignment of Error, Auto Craft argues that the trial court was manifestly erroneous in finding Mr. Sara-gusa met his burden of proving he had an injury caused by a work related accident.
The claimant in a worker’s compensation suit has the burden of establishing by a preponderance of the evidence that he has received an injury by accident occurring in the course of his employment. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207. The hearing officer’s determination as to whether the claimant has met this burden of proof is a factual finding that will not be disturbed in the absence of manifest error. Id. The hearing officer’s factual findings will only be set aside on appeal if there is no reasonable basis for this finding in the record and it is clearly wrong. Id.
In the case at bar, Mr. Saragusa testified that he twisted his ankle on three prior occasions during the course and scope of his employment with Auto Craft, including the time he stepped in a hole in the lot across the street from the shop. Mr. Saragusa further testified that the July 28 injury occurred when he was exiting |7the shop while carrying a vehicle hood. He testified that Mr. Walker left the shop to get ice to apply to his badly swollen ankle and that he sought medical treatment for the ankle injury that same day. While Mr. Walker and Mr. Rehage testified that they did not recall Mr. Sara-gusa reporting the lot incident, they both acknowledged that Mr. Saragusa made reference to it. No one at the shop reported witnessing the July 28.1998 fall that caused the final ankle injury, but they all testified that they saw Mr. Saragusa on the floor complaining that he hurt his leg. Mr. Walker denied that the ankle was swollen or that Mr. Saragusa was in pain, but admitted that he left the shop to purchase ice and that he applied the ice to Mr. Saragusa’s ankle. Mr. Walker further testified that he telephoned Mr. Saragusa later that day to check on the injury.
Mr. Walker argues that Mr. Sara-gusa injured his ankle when he slammed on his brakes during the hydroplaning incident. However, there was sufficient testimony to show that Mr. Saragusa did not injure his ankle during the hydroplaning incident and that this incident occurred after the July 28th injury. Dr. Pusateri testified that he had never seen someone sustain this type of ankle injury from slamming on the brakes. Further, three other witnesses testified that the hydroplaning incident in which Mr. Saragusa slammed on the brakes occurred after the July 28th injury. When there are two permissible views of the evidence, the fact-finder’s conclusion cannot be manifestly erroneous or clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). Thus, we find no error in the trial court’s finding that Mr. Saragusa was in *554 jured by accident during the course and scope of his employment on July 28, 1998.
Auto Craft argues that the trial judge was manifestly erroneous in awarding medical benefits to Mr. Saragusa because of his failure to prove a casual relationship between his medical condition and the accident of July 28, 1998. Having found that the evidence supports the trial court’s finding that Mr. Saragusa | smet his burden of proving a work related accident, we find no error in the trial court’s award of medical benefits for the injury sustained in this accident.
Auto Craft goes on to argue that the trial judge was manifestly erroneous in awarding penalties and attorney’s fees for its alleged arbitrary and capricious failure to pay medial expenses. It claims that this matter was reasonably controverted, thus penalties cannot be awarded.
LSA-R.S. 23:1201 provides for penalties and attorney’s fees for the employer’s failure to pay for medical treatment for an injured worker that is reasonable and necessary, unless the claim is reasonably controverted by the employer. The determination of whether an employer should be cast with penalties and attorney’s fees in a workers’ compensation proceeding is a question of fact that will not be disturbed on appeal absent manifest error. Jackson v. Quikrete Products, Inc., 2001-1181 (La.App. 4 Cor. 4/17/01), 816 So.2d 338.
Dr. Pusateri testified that he examined Mr. Saragusa on July 28,1998 after he had fallen at work. Dr. Pusateri explained that this injury was superimposed on a previous injury, which Dr. Pusateri testified were the previous times Mr. Saragusa had twisted his ankle at work. Dr. Pusa-teri testified that he told Mr. Walker that he had never seen an ankle injury like the one sustained by Mr. Saragusa from slamming on the brakes of a car. Dr. Pusateri recommended surgery on the ankle if it continued to be symptomatic, meaning that it continued to give out. Dr. Pusateri explained that the injury had caused the lateral aspect of the ankle to become unstable. After speaking to Dr. Pusateri, Mr. Walker requested that Mr. Saragusa be examined by Dr. Grimm, a physician chosen by Mr. Walker. Dr. Grimm examined Mr. Saragusa six months after the accident. He noted that there was a lot of stiffness in the ankle and recommended physical therapy. When Mr. Saragusa returned to Dr. Grimm following physical therapy, there was an increased range of motion in the ankle, but Mr. Saragusa continued to complain of 19pain. Dr. Grimm recommended an MRI to determine the reason for the continued pain. At that point Mr. Walker refused to pay for any further medical expenses.
LSA-R.S. 23:1201E provides that medical expenses be paid within 60 days of the employer or its insurer receives notice of the expense. There is no mention of when Mr. Walker or Auto Craft received notice of the medical expenses incurred after the MRI was ordered, but it is undisputed that no further medical expenses were paid. We find that Mr. Walker’s claim that Auto Craft was not arbitrary and capricious for failing to pay for further medical expenses to be without merit. The allegation that this injury was sustained when Mr. Sara-gusa slammed the brakes on a car is likewise without merit. Dr. Pusateri testified that he told Mr. Walker that he had never seen an injury such as the one suffered by Mr. Saragusa from slamming on brakes. Not satisfied with this response, Mr. Walker asked that Mr. Saragusa be examined by a physician of Mr. Walker’s choosing. Mr. Saragusa complied. When the second physician ordered an MRI, Mr. Walker arbitrarily refused to pay for any further medical expenses. Thus, the trial court *555 correctly awarded $2,000.00 penalties for Auto Craft’s failure to pay for medical expenses.
Auto Craft also assigns as error the trial court’s award of indemnity benefits to Mr. Saragusa when the parties agreed that no indemnity benefits were due. At the beginning of trial, Mr. Sara-gusa’s attorney stated that with regard to weekly indemnity benefits, his client had “no entitlement — or no claim for those through this point, and that that is not an issue today.” In his appellate brief, Mr. Saragusa agrees that he was not owed any indemnity benefits at the time of trial. Thus, we amend the trial court judgment to delete the award for payment of temporary total disability benefits and payment of supplemental earnings benefits, as well as the penalty in the amount of $2,000.00 for failure to pay indemnity benefits.
iipAuto Craft further argues that the $6,000.00 in attorney’s fees awarded were excessive when the parties agreed that no indemnity benefits were due and requests that the fees be reduced accordingly.
In awarding attorney’s fees, the court should consider the skill and work involved in the case, the number of court appearances, the depositions and time spent in court. Archbold v. Maxicare Health Plans, Inc., 98-531 (La.App. 5 Cir. 12/16/98), 722 So.2d 1200. At the time of the trial, this matter had been pending for over four years, several motions had been heard, numerous depositions had been taken, and the trial lasted nearly two days. Mr. Saragusa’s testimony itemized attorney’s fees and expenses totaling $9,537.50. The trial court’s award of $6,000.00 is supported by the record and we see no reason to reduce the award because the trial court erred in awarding indemnity benefits. The record does not show that indemnity benefits were ever contested and that the entirety of the work was performed to obtain medical payments.
MR. SARAGUSA’S ASSIGNMENTS OF ERROR:
In answering the appeal, Mr. Sar-agusa claims the trial court erred in failing to render judgment against Mr. Walker personally as Mr. Saragusa’s statutory co-employer. However, our review of the record indicates that Mr. Saragusa did not prove that Mr. Walker, individually, and Auto Craft were joint employers of Mr. Saragusa. Mr. Saragusa claims that he was compensated both by check from Auto Craft and by cash that came from Mr. Walker’s pocket. Mr. Saragusa contends that he was routinely paid in cash because Mr. Walker wanted to avoid paying additional taxes. Mr. Walker and the other Auto Craft employees who testified were questioned extensively regarding cash payments. The other Auto Craft employees denied ever being paid in cash. Mr. Walker testified that Mr. Saragusa continually asked to be paid in cash so that his child support payments would not lube increased. He admitted paying Mr. Saragu-sa in cash on two occasions in the amount of $100.00 each time when Mr. Saragusa was requesting total cash payments. The trial court apparently did not believe that Mr. Saragusa was routinely paid in cash or that Mr. Walker employed Mr. Saragusa outside of Auto Craft. Thus, we see no error in the trial court’s failure to render judgment against Mr. Walker personally.
Mr. Saragusa also argues that the judgment should be amended to include indemnity benefits for any future disability. Mr. Saragusa contends that when he has ankle surgery he will be disabled for four to six weeks and is entitled to indemnity benefits for the amount of time missed from work due to this surgery. Our re *556 view of the record indicates that Mr. Sara-gusa did not prove that he will need surgery in the future. Dr. Pusateri testified that he would recommend surgery if Mr. Saragusa’s ankle becomes symptomatic, meaning that it gives out. Dr. Grimm testified that he would not recommend surgery at this time. Mr. Saragusa testified that his ankle is stiff and painful, but he never testified that the ankle gives out. Thus, the trial court correctly denied indemnity benefits for any future disability.
Finally, Mr. Saragusa requests an increase in the attorney fee award for this appeal. A workers’ compensation claimant is entitled to an award of additional attorney’s fees for work performed in defending an appeal by the employer. Rachal v. Good Neighbor Glass, Inc., 2003-1288 (La. App. 3 Cir.3/3/04), 867 So.2d 129. Accordingly, we award an additional $1,000.00 for work performed on this appeal.
1 ^.CONCLUSION:
For the foregoing reasons, the judgment of the trial court is amended to delete the awards of indemnity benefits and penalties for failure to pay indemnity benefits and award an additional $1,000.00 attorney fees for legal work on this appeal. The judgment of the trial court is affirmed in all other respects.

AFFIRMED AS AMENDED.

h REHEARING GRANTED:
This rehearing is granted for the limited purpose of clarifying that nothing in the opinion issued in this matter should be construed to affect plaintiffs right to medical treatment for his ankle injury.

. A judgment granting a Motion for New Trial erases the trial court judgment and puts the parties in the positions they occupied prior to trial. See Davis v. Witt, 2002-31-2 (La.7/2/03), 851 So.2d 1119. Before a new trial could be held on the issue of indemnity, Auto Craft filed a suspensive appeal from both the original judgment and the new trial judgment. While we recognize the proper procedure is for the trial court to conduct a new trial on the issue for which a new trial was granted prior to appeal, when as is the case herein, the trial court granted a new trial to correct an obvious error, as discussed later in this opinion, we will exercise our appellate jurisdiction in the interest of judicial economy and render judgment on all issues including that for which a new trial was granted.